IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Stephen J. Green, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 2:22-2552-BHH |
| v. ) | |
| ) | |
| Brian Sterling, Charles Williams; ) | **ORDER** |
| John Palmer, Amy Enloe, Natasha ) | |
| Harper, Mr. Martin, Ms. Boyd, ) | |
| Ms. Wyant, D. Lee, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the Court upon Plaintiff Stephen J. Green's ("Plaintiff" or "Green") *pro se* complaint, which was originally filed in the Court of Common Pleas for Greenville County on June 20, 2022. (ECF No. 1-1.) In his complaint, which Defendants removed to this Court on August 3, 2022, Plaintiff alleges claims pursuant to 42 U.S.C. § 1983 and the South Carolina Tort Claims Act ("SCTCA"), S.C. Code Ann. §§ 15-78-10 – 15-78-220.

On August 3, 2022, Defendants Bryan Stirling ("Stirling"), Charles Williams ("Williams"), John Palmer ("Palmer"), Amy Enloe ("Enloe"), Natasha Harper ("Harper"), Mr. Martin ("Martin"), Ms. Boyd ("Boyd"), Ms. Wyantt ("Wyantt"), and D. Lee ("Lee") (collectively "Defendants")[1] filed a motion for summary judgment. (ECF No. 62.) In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(e), D.S.C., the matter was referred to a United States Magistrate Judge for preliminary consideration.

On July 13, 2023, Magistrate Judge Mary Gordon Baker issued a report and

---

[1] This list reflects the proper spelling of the names of Bryan Stirling and Ms. Wyantt. (*See* ECF No. 62-1 at n. 1 and 2.)

recommendation ("Report") outlining the issues and recommending that the Court grant in part Defendants' motion for summary judgment. (ECF No. 109.) Specifically, the Magistrate Judge recommends that the Court grant summary judgment as to Plaintiff's federal claims and dismiss those claims, and that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims and remand those to the Court of Common Pleas for Greenville County. Plaintiff filed objections to the Magistrate Judge's Report; Defendants filed a response to Plaintiff's objections; and Plaintiff filed a reply to Defendants' response. (ECF Nos. 111, 115, and 116.) For the reasons set forth below, the Court fully adopts the Magistrate Judge's Report and overrules Plaintiff's objections.

## STANDARDS OF REVIEW

### I.     The Magistrate Judge's Report

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination only of those portions of the Report to which specific objections are made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). In the absence of specific objections, the Court reviews the matter only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

**II.     Summary Judgment**

A court shall grant summary judgment if a party shows that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  All evidence should be viewed in the light most favorable to the non-moving party.  *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

As an initial matter, in Plaintiff's written objections, he does not object to the Magistrate Judge's recitation of the relevant factual background.  In fact, Plaintiff actually repeats, largely verbatim, the majority of the facts as stated in the Report.  (*Compare* ECF No. 109 at 2-5 *with* ECF No. 111 at 2-5.)  After review, the Court finds no clear error and concludes that the Magistrate Judge fairly and accurately summarized the facts. Accordingly, the Court hereby adopts and incorporates the Magistrate Judge's recitation of the factual background, and the Court repeats herein only the facts necessary to evaluate Plaintiff's objections.

Additionally, Plaintiff does not object to any of the following of the Magistrate Judge's findings: (1) that Plaintiff failed to properly exhaust his administrative remedies as to all of his claims aside from his claim regarding the five-inch concrete beds, set forth in section

"A" of the Report, titled "Exhaustion" (ECF No. 109 at 6-11.); (2) that Plaintiff's § 1983 claims for monetary damages brought against Defendants in their official capacities are barred by the Eleventh Amendment, set forth in section "B" of the Report, titled "Eleventh Amendment Immunity" (*Id.* at 11-13.); and (3) that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law causes of action, set forth in section "D" of the Report, titled "State Law Claims" (*Id.* at 32-33.)  After a careful review of these portions of the Magistrate Judge's Report, the Court finds no clear error and agrees with the Magistrate Judge's extremely thorough analysis.  Accordingly, the Court hereby adopts these portions of the Magistrate Judge's Report without further discussion.

Plaintiff does, however, object to the Magistrate Judge's findings in section "C" of her Report, titled "§ 1983 Claims."  (*Id.* at 13-32.)  Specifically, Plaintiff "objects to the Magistrate's recommendation to grant Defendants summary judgment on Plaintiff's § 1983 claim for deliberate indifference to conditions of confinement."  (ECF No. 111 at 17.)

**I.     The Magistrate Judge's Findings in Section "C" of the Report**

In section "C" of her Report, the Magistrate Judge summarized the law applicable to Plaintiff's § 1983 claims, which allege that Defendants acted with deliberate indifference to both Plaintiff's conditions of confinement and his serious medical needs.  As the Magistrate Judge explained, in *Estelle v. Gamble*, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment.'" 429 U.S. 97, 104 (1976).  The Magistrate Judge further explained that, to prevail on an Eighth Amendment deliberate indifference claim, "a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison officials

acted with a sufficiently culpable state of mind." *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (internal quotation marks and citations omitted). As the Magistrate Judge also explained, to state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" *Strickler v. Waters*, 989 F.2d 1379 (4th Cir. 1993) (quoting *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991)).

In her Report, the Magistrate Judge summarized in great detail the relevant evidence in the record, including the documentation pertaining to the transition to cement beds from metal beds at Perry Correctional Institution ("Perry"), the various Request to Staff Member ("RTSM") forms and grievances filed by Plaintiff, and Plaintiff's physical and mental health medical records. (*See* ECF No. 109 at 14-22.) After outlining this evidence, the Magistrate Judge considered Plaintiff's conditions-of-confinement claims, first reiterating her conclusion that all of Plaintiff's claims, aside from his claim arising from the height of the concrete beds, should be dismissed on the basis of Plaintiff's failure to exhaust his administrative remedies.[2] Next, the Magistrate Judge found that, regardless of Plaintiff's failure to exhaust, the claims also fail because Plaintiff has not established an Eighth Amendment violation.[3] (*Id.* at 23-24.)

---

[2] As explained previously, Plaintiff does not object to the Magistrate Judge's findings regarding exhaustion.

[3] In addition to specifically considering Plaintiff's § 1983 conditions-of-confinement claims, as outlined above, the Magistrate Judge also considered Plaintiff's § 1983 claim for deliberate indifference to serious medical needs, arising from (1) the alleged ineffective and delayed treatment for Plaintiff's back pain and (2) the alleged failure to adhere to prescribed treatment for Plaintiff's mental health. (*See* ECF No. 109 at 27-32.) First, the Magistrate Judge noted that the claim is subject to dismissal based on Plaintiff's failure to exhaust his administrative remedies. Nevertheless, the Magistrate Judge considered the merits of the claim and found "insufficient evidence to support any deliberate indifference claim." (*Id.* at 28.) The Magistrate Judge

With regard to Plaintiff's exhausted claim regarding the height of Plaintiff's concrete bed and Plaintiff's resulting injuries, the Magistrate Judge found that, "[w]hen construed in the light most favorable to Plaintiff, the evidence establishes a genuine dispute of material fact as to the objective prong" of the claim. (*Id.* at 24.) The Magistrate Judge stated: "Plaintiff's medical records, coupled with the allegations in his Verified Complaint, sufficiently establish that the height of the concrete bed exasperated his preexisting back injury, requiring referrals to specialists for treatment." (*Id.*) However, the Magistrate Judge next found that Plaintiff failed to "show that any Defendants acted with a sufficiently culpable state of mind under the subjective prong." (*Id.*) According to the Magistrate Judge, Plaintiff's grievances complaining about the height of the concrete beds did not connect this condition of confinement to his preexisting back pain, insofar as Plaintiff did not mention in these grievances "that his own back pain was severe and exacerbated by his preexisting back injury." (*Id.* at 25.) The Magistrate Judge also pointed to the evidence submitted by Defendant showing that the beds "at Perry were changed from metal to

---

explained that there is no evidence that non-medical prison personnel "were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to prison physicians' misconduct." (*Id.* (citing *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990), and *Mallett v. Johnson*, No. 8:08-cv-863-PMD, 2008 WL 5351618, at *7 (D.S.C. Dec. 22, 2008).) Furthermore, the Magistrate Judge explained that although Defendant Williams reviewed Plaintiff's RTSM form asking for medical assessment of his two pinched nerves in his back, Williams took appropriate action by forwarding the complaints "to medical and mental health." (*Id.* (quoting ECF No. 95-2 at 13).)

Ultimately, the Magistrate Judge concluded that "Plaintiff received regular treatment for his back pain at Perry throughout the time period at issue," noting Plaintiff's "MRI, pain medication, physical therapy and treatment at an orthopedic clinic, and an epidural steroid injection." (*Id.* at 29.) The Magistrate Judge also concluded that Plaintiff failed to demonstrate any deliberate indifference to his mental health needs, noting that Plaintiff received extensive care for his mental health as soon as he complained, to include psychiatric evaluations and medication adjustments. (*Id.* at 31.)

Plaintiff does not specifically object to this portion of the Magistrate Judge's Report; rather, Plaintiff's objections relate to the Magistrate Judge's treatment of his § 1983 conditions-of-confinement claim. Ultimately, whether under a clear error or *de novo* standard of review, the Court finds that the Magistrate Judge accurately analyzed the evidence and applied the appropriate law in determining that Defendants are entitled to summary judgment on Plaintiff's claim for deliberate indifference to serious medical needs for the specific reasons set forth in the Report.

cement in 2019 for specific policy reasons including, *inter alia*, 'less metal to be used for weapons; safer for forced cell movement teams (I/M hiding under bed); . . . fewer hiding places for contraband; . . . lower beds make it more difficult to reach lights (still within ADA regulations); . . . limit likelihood of self-harm.'" (*Id.* at 26 (quoting ECF No. 62-23).) After considering the evidence, the Magistrate Judge explained that she could not "find that any Defendants in this case had actual knowledge of a substantial risk of harm to Plaintiff based on the height of the concrete beds and disregarded that substantial risk." (*Id.* at 27.)

## II.  Plaintiff's Objections

In his objections, Plaintiff appears to agree with the Magistrate Judge's finding that a genuine dispute of material fact exists as to the objective element of his Eighth Amendment claim arising from the height of the concrete bunk. (ECF No. 111 at 6.) However, Plaintiff does not agree with the Magistrate Judge's finding that he cannot show that Defendants acted with a sufficiently culpable state of mind under the subjective prong. (*Id.*) After summarizing his relevant grievance forms, Plaintiff takes issue with the Magistrate Judge's conclusion that Plaintiff's grievances did not connect the height of the concrete bunk to his pre-existing back pain, and Plaintiff states:

> At the time Plaintiff filed the step 1 grievance his complaint was the "pain" that the "V" position the concrete slab caused him to sit in caused him. That "pain" existed with or without the existence of a pre-existing condition.
>
> Plaintiff's grievance not stating/connecting the 5-inch concrete slab to his preexisting injury does not negate the fact that Plaintiff's grievance step 1 and step 2 connected the 5-inch concrete slab to being the cause of his recent pain(s) and also placed him at risk of injury.
>
> Nor does Plaintiff's grievance not stating/connecting this 5-inch concrete slab to his pre-existing injury negate the fact that Defendant(s) were aware of Plaintiff's pain and suffering and chose to deliberately ignore it as simply the price one pays for being in (RHU).

7

(*Id.* at 9.)  Plaintiff goes on to assert that "it was not until after filing his step 1, step 2 grievance . . . that Plaintiff was began to suspect that his pre-existing injury was becoming worse due to the conditions that caused him to suffer 'new' pain." (*Id.* at 10.)  According to Plaintiff: his step 1 and step 2 grievances "sufficiently placed Defendants on notice that the harmful conditions caused Plaintiff pain, suffering and risk of injury, serious injury; likewise Defendants' awareness of Plaintiff's pain, and risk of injury . . . for approximately 18 months . . . shows that Defendants acted with a sufficiently culpable state of mind and satisfy the subjective prong." (*Id.* at 11.)

Additionally, Plaintiff objects to the Magistrate Judge's reliance on evidence provided by Defendants regarding the specific policy reasons that supported the change from metal beds to concrete beds at Perry. (*Id.* at 12.)  Plaintiff asserts that the government offered no "proof" that the government weighed alternative options or "competing interest in their decision to replace the bed frame with a concrete slab (5 inches in height) as they ought to have done . . . ." (*Id.* at 12-13.)  According to Plaintiff, Defendants applied "standards/conditions/designs that are not accepted design standards," and Defendants' conduct amounts to "recklessness, callous indifference to rights and safety of prisoners, and shows a sufficiently culpable state of mind under the subjective prong" of his Eighth Amendment claim." (*Id.* at 13.)

In all, Plaintiff asserts that "if Defendants had not displayed deliberate indifference to the pain and suffering and harmful conditions exposed Plaintiff to, Plaintiff's pain and suffering would not have worsened, nor would Plaintiff's 'new' pain have led to the worsening of 'old' pain, pre-existing pain, and/or the worsening of pre-existing injuries." (*Id.* at 15.)

After a thorough and *de novo* review of the evidence of record, the Court is not persuaded by Plaintiff's objections. Instead, the Court agrees with the Magistrate Judge that, even though Plaintiff may be able to satisfy the objective prong of his Eighth Amendment conditions-of-confinement claim concerning the height of the concrete bed, the evidence of record simply does not demonstrate that any Defendants acted with a sufficiently culpable state of mind under the subjective prong. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (explaining that the subjective prong of a deliberate indifference claim requires a plaintiff to allege facts that indicate a defendant actually knew of and disregarded a substantial risk of serious harm to the plaintiff); *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (explaining that a plaintiff claiming that conditions of confinement violate constitutional requirements must show both (1) a serious deprivation of a basic human need and (2) deliberate indifference on the part of prison officials).

Here, although Plaintiff states in his objections that his step 1 and 2 grievances sufficiently connected the five-inch slab to his back pain, a *de novo* review of the evidence indicates otherwise. First, Plaintiff's October 19, 2021 RTSM form to Defendant Palmer states only that "the bed slab that has replaced the beds which is five inches off the floor causes inmates to sit in the V-position with their knees above their chest causes back problems, pain, and injuries."  (ECF No. 1-1 at 25.)  Importantly, this form references inmates *in general* and the *potential* for pain or injuries, but it does not refer to Plaintiff's own back pain. (ECF No. 1-1 at 25.)  Likewise, in his October 20, 2021 step 1 grievance form, Plaintiff complains about the "five inch slab at the back of the cell that has replaced the beds as this (slab) is not with in state or federal guidelines and causes *inmates* to sit in the V position causing lower back pain and *can* lead to injury."  (ECF No. 62-26 at 5

9

(emphasis added).)  Again, this grievance only references inmates in general and a potential for injury but does not reference Plaintiff's own pain.  And Plaintiff's December 2021 step 2 grievance also refers only to the "concrete slab that sits five inches off the floor requiring inmates to sit in a V position which puts all a person's weight on the small of their back causing back pain and injuries if prolonged."  (*Id.* at 7.)  Because these grievances include only broad and general complaints regarding the five-inch concrete slabs, and because Plaintiff never mentions that he was injured as a result of the condition, or that he was experiencing back pain, let alone severe back pain (whether new or worsening as a result of a pre-existing condition), as a result of the condition, the Court finds no basis to conclude that Defendants subjectively acted with a sufficiently culpable state of mind.  Furthermore, the Court is not convinced by Plaintiff's argument that Defendants effectively showed subjective deliberate indifference because they failed to weigh competing alternatives to the concrete beds or somehow failed to comply with unidentified design standards or federal guidelines.  Leaving aside the fact that Plaintiff does not allege which competing alternatives Defendants failed to consider or which design standards Defendants somehow failed to comply with, these arguments, while perhaps relevant to Plaintiff's state law negligence claims, do not alter the Court's analysis of whether Defendants had a valid penological justification for the condition of confinement at issue, which further indicates that Defendants lacked the required subjective ill intent when exposing Plaintiff to the condition.  *See Porter v. Clarke*, 923 F.3d 348, 362-63 (4th Cir. 2019).  Ultimately, for all of the reasons set forth by the Magistrate Judge and for the reasons set forth herein, the Court finds that Defendants are entitled to summary judgment on Plaintiff's § 1983 deliberate indifference claim regarding the height of the concrete beds, as the evidence

simply does not create a genuine issue of material fact as to the subjective prong of the claim. In other words, the Court agrees with the Magistrate Judge that the evidence, viewed in the light most favorable to Plaintiff, does not show that any Defendant acted with a sufficiently culpable state of mind, as the evidence does not demonstrate that any Defendant had actual knowledge of a substantial risk of harm to Plaintiff based on the height of the concrete beds, or that Defendants disregarded that substantial risk.[4] Accordingly, the Court hereby adopts the Magistrate Judge's findings and recommendations and overrules Plaintiff's objections.

## **CONCLUSION**

Based on the foregoing, the Court **adopts in full and specifically incorporates** that Magistrate Judge's Report (ECF No. 109); the Court **overrules Plaintiff's objections** (ECF No. 111); the Court **grants in part Defendants' motion for summary judgment** (ECF No. 62), insofar as the Court finds that **Defendants are entitled to summary judgment on Plaintiff's federal claims**; and the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and **remands those claims to the Court of Common Pleas for Greenville County for further proceedings.**

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
United States District Judge

September 22, 2023
Charleston, South Carolina

---

[4] Furthermore, the Court notes that Plaintiff's assertion that he did not suspect that his pre-existing pain was worsening "until after filing his step 1, step 2 grievance," actually *supports* the Court's conclusion. (*See* ECF No. 111 at 10.) For if Plaintiff himself did not suspect that his back pain was worsening due to the concrete beds until *after he filed his grievances*, then how could these grievances have provided Defendants with subjective knowledge of a substantial risk of harm?

11